# Polizzi *v.* Commercial Fire Insurance Company, Appellant.

*Insurance—Fire insurance—Loss—Alleged adjustment of loss— Evidence—Sufficiency—Evidence of loss—Incompetent evidence— Inventory—Books of insured—Estoppel—Waiver.*

1. In an action on a fire insurance policy, insuring a stock of merchandise which had been destroyed by fire, it appeared that an insurance adjuster representing plaintiff met an agent of defendant company and discussed the subject of the loss; that thereafter plaintiff submitted a proof of loss to which was attached a paper entitled "Statement of Loss," under which appeared the words, "as agreed in detail between assured and adjuster," followed by certain gross items. About one month thereafter, plaintiff produced certain books and papers at the office of defendant's attorney, at which time plaintiff's adjuster stated that defendant's agent "and I agreed upon the measure of damages on the 19th of December, 1913, at $3,324.32, made up as follows," mentioning the several gross items referred to in the statement of loss. About two months thereafter defendant notified plaintiff that it declined to pay his loss. There was no evidence to show that defendant's agent had authority to agree upon a figure that defendant would pay. *Held,* that the statement attached to the proof of loss, and the statement of plaintiff's adjuster at the meeting, that defendant's agent "and I agreed upon the measure of damages," were not sufficiently clear, comprehensive or specific to put the defendant on notice that plaintiff claimed that the amount of loss

had been definitely adjusted or agreed to by defendant's agent, purporting to act on behalf of defendant, so as to estop the defendant from denying such to be the fact at the trial or sufficient in themselves to justify a finding that the so-called adjustment had taken place.

2. Where, in such case, plaintiff could not read or write English, and produced copies of bills rendered to him by various persons for goods purchased prior to the fire, but merely stated that he recognized the bills by their size and color, it was error to permit him, after refreshing his recollection therefrom, to state the dates, amounts and values of certain of his purchases, and to admit such copies in evidence. If other competent proof was not available, plaintiff should have taken the testimony of those from whom he purchased the goods, which would have proved his loss with reasonable precision, all that is required in such cases.

3. Where plaintiff submitted proofs of loss on the 19th of December, the fact that he was not notified, until April 24th of the following year, that defendant declined to pay the claim, was not a waiver of defense to the action, in view of fact that origin of the fire which occurred soon after the insurance was effected, was unexplained, and required investigation, and where there was nothing to show that plaintiff had been deceived or unduly prejudiced by the company's delay in notifying him that it declined to pay his claim.

4. Where a policy of fire insurance required that an inventory should be made within thirty days from the taking out of the insurance, unless such inventory had been taken within twelve calendar months prior thereto, and that the assured should keep a set of books which should clearly and plainly present a complete record of business transactions to the date of the inventory, the fact that plaintiff did not make and have such inventory and set of books at the time of the fire would not necessarily prevent recovery, in view of the fact that the fire occurred within thirty days after the insurance was effected; that there was no requirement imposed upon the assured to keep a set of books until he had made an inventory, and that by the terms of the contract he was given thirty days in which to make one.

Argued Sept. 25, 1916. Appeal, No. 171, Oct. T., 1916, by defendant, from judgment of C. P. Armstrong Co., Sept. T., 1914, No. 170, on verdict for plaintiff, in case of Carmello Polizzi v. Commercial Fire Insurance Company, a corporation of the District of Columbia. Before BROWN, C. J., MESTREZAT, POTTER, STEWART, MOSCHZISKER, FRAZER and WALLING, JJ. Reversed.

Assumpsit on a fire insurance policy.    Before KING, P. J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $3,260 and judgment thereon. Defendant appealed.

*Errors assigned* were rulings on evidence and instructions to the jury.

*S. S. Mehard,* of *Mehard, Scully & Mehard,* with him *R. L. Ralston,* for appellant.—The proof of loss was not admissible in evidence to show the extent or amount of the loss: Commonwealth Insurance Co. v. Sennett, et al., 41 Pa. 161; Kittanning Ins. Co. v. O'Neill, 110 Pa. 548; People's Mut. Accident Assn. of Pittsburgh v. Smith, 126 Pa. 317; Cole Bros. v. Manchester Fire Assurance Co., 188 Pa. 345; Sutton v. American Fire Ins. Co., 188 Pa. 380; Cummins v. German American Ins. Co., 192 Pa. 359; Rosenberg v. Fireman Fund Ins. Co., 209 Pa. 336.

There was not sufficient evidence to submit to the jury of an adjustment of the loss.

It was error to permit the plaintiff to refresh his memory from copies of bills for goods purchased by him and to admit such bills in evidence: Farmers and Mechanics Bank v. Boraef, 1 Rawle 152; Meighen v. Bank, 25 Pa. 288; Selover, to use of Barrows' Admr., v. Rexford's Exec., 52 Pa. 308.

The plaintiff having failed to keep a set of books in which purchases, sales and shipments were recorded was not entitled to recover: Liverpool & London & Globe Ins. Co. v. Kearney, 180 U. S. 132; American Cent. Ins. Co. v. Ware, et al., 46 S. W. Repr. 129; Connecticut Fire Ins. Co. v. Clark, 24 Ohio Cir. Ct. R. 33; Phoenix Ins. Co. of Hartford v. Padgitt, et al., 42 S. W. Repr. 800; Pelican Ins. Co. v. Wilkerson, 13 S. W. Repr. 1103; Everett-Ridley-Ragan Co. v. Traders' Ins. Co. of Chicago, Ill., 48 S. E. Repr. 918; German Ins. Co. v. John W. Bates &

Co., 67 Ill. App. 370; Malin v. Mercantile Town Mut. Ins. Co., 105 Mo. App. 625; Western Assurance Co. of Toronto v. McGlathery, 115 Ala. 213; German Ins. Co. of Freeport, Ill., v. John W. Bates & Co., 60 Ill. App. 43; Farmers Fire Ins. Co. v. John W. Bates & Co., 65 Ill. App. 37; Niagara Fire Ins. Co. v. Forehand, 169 Ill. 626; Keet-Rountree Dry Goods Co. v. Mercantile Town Mut. Ins. Co., 100 Mo. App. 504; Forehand v. Niagara Ins. Co., 58 Ill. App. 161; Farmers Fire Ins. Co. v. John W. Bates & Co., 60 Ill. App. 39; Ætna Ins. Co. v. Johnson, 56 S. E. Repr. 643; Coggins v. Ætna Ins. Co., 56 S. E. Repr. 506; Gish, Brook & Co. v. Ins. Co. of No. Amer., 16 Okla. 59; Phœnix Ins. Co. v. Bourgeois, 105 Miss. 698; Rives v. Philadelphia Fire Assn., 77 S. W. Repr. 424; Langan v. Royal Ins. Co. of Liverpool, 162 Pa. 357; Seibel v. Lebanon Mutual Ins. Co., 197 Pa. 106.

*H. A. Heilman,* with him *H. C. Golden* and *C. S. Hulings,* for appellee.—The bills were properly admitted in evidence.

There was ample evidence of an adjustment of the loss made between plaintiff and defendant's agent.

The iron safe clause has no application under the facts of this case: Bayless v. Mercantile Town Mut. Ins. Co., 80 S. W. Repr. 289; Continental Ins. Co. of N. Y. v. Waugh & Son, 60 Neb. 348; Bush v. Hartford Fire Ins. Co., 222 Pa. 419; Hanick v. Leader, 243 Pa. 372; Bingell v. Royal Ins. Co., Ltd., 240 Pa. 412; Weisberger v. Western Reserve Ins. Co. of Ohio, 250 Pa. 155.

OPINION BY MR. JUSTICE MOSCHZISKER, January 8, 1917:

November 13, 1913, the plaintiff, a country store-keeper, procured from the defendant company a policy of fire insurance on his stock of merchandise. On the night of December 2, 1913, the building occupied by the plaintiff, and its contents, were destroyed by fire; he was upon the premises at the time, but professed entire

ignorance as to the origin of the fire. On December 19, 1913, a Mr. Zieg, an insurance adjuster employed by the plaintiff, met with a Mr. Hepler, an agent of the defendant company, and discussed the subject of the loss. January 23, 1914, plaintiff submitted his written claim or proof of loss, upon a form furnished by the insurance company, to which he attached another paper entitled, "Statement of Loss," containing certain gross items, with accompanying figures, showing a total loss of $3,-324.32; near the head of this latter paper these words appear: "As agreed in detail between assured and adjuster." February 14, 1914, a letter signed, "A. L. Hepler, Agent," was sent to the plaintiff, notifying him to produce his books, etc., for inspection. In pursuance of this notice, on February 24, 1914, a meeting was held at the office of the defendant company's attorney in Pittsburgh, at which time the plaintiff produced certain books and papers. During the course of this meeting Mr. Zieg, representing the plaintiff, stated, "Mr. Hepler and I agreed upon the measure of damages on the 19th of December, 1913, at $3,324.32, made up as follows," after which, on the stenographer's notes of the minutes of this meeting, appear several gross items, totaling the amount already stated. April 14, 1914, the secretary of the insurance company sent a letter to the plaintiff notifying him that, on investigation, it declined to pay his alleged loss, upon the grounds, inter alia, (1) that the cash values of the various items involved therein were incorrectly stated, (2) that he had not conformed to "the requirements of the policy as to keeping a set of books which would clearly and plainly present a complete record of the business transacted." August 18, 1914, the plaintiff sued and recovered a verdict for, approximately, the full amount of his claim; judgment was entered accordingly, and the defendant has appealed.

The numerous assignments of error raise three principal questions, which appellant correctly summarizes thus: (1) "Did the court err in admittance of evidence?"

(2) "Was there evidence sufficient to submit to the jury, either as to an adjustment of loss, or as to amount of loss?" (3) "Was the requirement [of the policy] as to keeping books of purchases and sales a condition of recovery?"

The plaintiff, who was the only witness to the value of the property destroyed, produced what he testified were copies of bills which had been rendered to him by various persons from whom he had purchased goods prior to the fire, and claimed that all the articles mentioned therein were in his store at the time of its destruction, except a comparatively small quantity of merchandise previously removed or sold by him. He stated the original bills had been lost, but that Mr. Zieg, the insurance adjuster, had secured duplicates for him. While admitting he could neither read nor write English, the plaintiff said he recognized the various bills by their size and color; whereupon he was permitted to refresh his recollection therefrom, as to the dates, amounts and values of certain of his purchases; moreover, the duplicate bills themselves were admitted in evidence: all this was harmful error. The testimony shows that, in most part, the plaintiff was incapable of stating the amounts of his purchases or the values of the goods in the store on the night of the fire, without the aid of this incompetent documentary evidence. Under these circumstances, wherever he was unable to enumerate the articles on hand, with their respective values, if other competent proof was not available, he should have taken the testimony of those from whom he purchased the goods; in this way he could have proved his loss with reasonable precision, which is all that is required in such cases.

As to the alleged adjustment by Mr. Hepler, there is nothing in the testimony to prove that this man had authority to agree upon a figure the defendant would pay; nor, in fact, is there evidence sufficient to show that he undertook so to do. True, Mr. Zieg, although frequently warned that he should not, insisted upon giving

his conclusion that Mr. Hepler had acquiesced in the
figures as written down by the former; but nowhere in
his testimony does this witness relate any facts concern-
ing the utterances of Mr. Hepler which would justify an
inference or conclusion that the latter had contracted on
behalf of the defendant company for an actual adjust-
ment of the loss. Again, neither the statement of Mr.
Zieg (at the conference in relation to the loss, held Feb-
ruary 24, 1914), to the effect that "Mr. Hepler and I
agreed upon the measure of damages," etc., nor the mem-
orandum attached to the formal proofs of loss, in these
words, "as agreed in detail between assured and ad-
juster," was sufficiently clear, comprehensive or specific
to put the insurance company on notice that the plaintiff
claimed, as a matter of fact, that the amount of loss had
been definitely adjusted or agreed to by Mr. Hepler, pur-
porting to act on its behalf, so as to estop the defendant
from denying (as it did at trial) such to be the fact;
nor are those items of evidence sufficient in themselves
to justify or sustain a finding that the so-called adjust-
ment had in fact taken place.

Firstly, assuming that Mr. Hepler did just what Mr.
Zieg stated, i. e., "agreed upon the measure of damages,"
since the "measure" is merely the rule by which dam-
ages are to be estimated, Mr. Zieg's statement might
well be taken to mean simply that Mr. Hepler and he
had agreed between them that, in estimating the plain-
tiff's damages, all the items set forth in his written claim,
or proofs of loss, were to be taken into account, and that
they were the only ones to be considered. Next, the
words on the statement attached to the proofs of loss
(quoted in the previous paragraph) cannot, with any de-
gree of certainty, be said to have conveyed any definite
information to the defendant on the subject of the al-
leged adjustment, for they failed to state the name of
the adjuster therein referred to, or that he was acting,
or purporting to act, on behalf of the insurance com-
pany. As a matter of fact, considering the nature and

office of proofs of loss (Sutton v. American Fire Ins. Co., 188 Pa. 380, 383; Rosenberg v. Fireman's Fund Ins. Co., 209 Pa. 336), and the manner in which those in the present case were prepared, one might just as well assume that the memorandum in question referred to an adjuster employed by the plaintiff himself, as to one representing the insurance company.

It appears that Mr. Zieg sought out and arranged the meeting with Mr. Hepler, because the latter was the agent of the defendant company who "had been instrumental in placing the insurance and had countersigned the policy"; and it is more than likely that all which really occurred at their meeting, on December 19, 1913, was that Mr. Hepler assisted Mr. Zieg in preparing the information necessary to enable the plaintiff to submit his formal proofs of loss; but, however this may be, as already stated, it is clear the evidence was insufficient to sustain a finding that a binding adjustment had taken place, or to estop the defendant company from asserting the contrary. In this connection, the trial judge very correctly charged that the delay of the insurance company in sending to the plaintiff its declination to pay was a waiver of any insufficiency in the proofs of loss; but he could not properly have ruled that the amount of loss claimed therein was conclusive on the defendant, and, as before said, we see no warrant in the evidence for permitting the jury so to find.

Under the circumstances of this case, in view of the unexplained origin of the fire, which occurred soon after the insurance was effected, and the evidence in the hands of the defendant indicating the removal of considerable quantities of goods just prior to the alleged loss, it can be seen that the insurance company had some apparent justification for delaying its decision, while making investigations; particularly is this so when we look at the letter sent, December 20, 1913, by Mr. Hepler to Mr. Kramer (alleged by the defendant to be its adjuster), wherein he enclosed a copy of the summary of the plain-

tiff's claim, as made up by Mr. Zieg on December 19th, showing the alleged loss of $3,324.32, and wherein he refers to this summary as "an estimate," and states, in effect, that he believes the figures to be exorbitant. If this statement of December 19, 1913, was a final adjustment of the loss, (as said by the trial judge in his charge to the jury) "Why the meeting in Pittsburgh more than a month later?" Of course, had the plaintiff presented sufficient evidence upon the subject in hand, all these questions would have been for the jury; but, as we have endeavored to show, he failed so to do. Finally, before leaving this branch of the case, it may not be amiss to state that there was no evidence offered to prove the plaintiff had been deceived or unduly prejudiced by the company's delay in notifying him that it declined to pay his claim.

On the question of the construction of the policy, we agree with the view of the court below. In reference thereto, President Judge KING states: "The insurance policy, which is the foundation of this action, contained what is known as the 'Iron Safe Clause,' which is as follows:......'1st. The assured will take a complete itemized inventory of stock on hand at least once in each calendar year, and, unless such inventory had been taken within twelve calendar months prior to the date of this policy, one shall be taken in detail within 30 days of issuance of this policy......2d. The assured will keep a set of books, which shall clearly and plainly present a complete record of business transacted......from the date of inventory, as provided for in first section of this clause, and during the continuance of this policy. 3d. The assured will keep such books and inventory...... securely locked in a fire-proof safe at night......In the event of failure to produce such set of books and inventories for the inspection of this company, this policy shall become null and void and such failure shall constitute a perpetual bar to any recovery thereon.' Because the plaintiff did not make and have such an inventory

and set of books at the time of the fire, the defendant ......insisted that there could be no recovery......Under the peculiar facts of the case we, in substance, instructed the jury that this clause and condition in the policy would not, in itself, prevent the plaintiff from recovering a verdict, if the facts otherwise warranted. ......The fire occurred upon the twentieth day after the policy became effective. No inventory had been made previous to the date of the policy, and the foregoing first paragraph of said clause in the policy provided that, in case no inventory had been taken within twelve calendar months prior to the date of this policy, one shall be taken in detail within thirty days of its issuance; at the time of the fire no such inventory had been taken, and, if the fire had not occurred, a compliance therewith would have required the taking of such inventory within the remaining ten days. The second paragraph of said clause provides that the assured will keep a set of books, etc., etc., ......from date of inventory as provided in first section of this clause. When was the assured to start to keep a set of books? As we read the language used, clearly from the date of the inventory. If we transpose the setting of the language of the paragraph so that it will read as follows: 'From date of inventory, as provided in first section of this clause, assured will keep a set of books, etc.,' the meaning seems certain and clear. We cannot understand this paragraph any other way, and it follows that the contemplated duty of the plaintiff to make the inventory and keep a set of books, pursuant to said clause, had not ripened into an obligation as yet when the fire occurred. The policy was only to be null and void in the event that no inventory was taken within thirty days from date of the policy, and, in case an inventory was made at any time within the said thirty days, there came a further requirement that, from the date of said inventory, the assured should keep a set of books, etc. There was no requirement—no obligation—imposed upon the assured to keep a set of books until he

had made an inventory, and by the terms of the contract he was given thirty days in which to make one. How can it then be held that he failed in the performance of an obligation imposed by this clause that would preclude him from recovering upon the policy for a loss that occurred within said thirty-day period? If from the date of the policy he had kept a set of books without having taken an inventory, or had taken an inventory and had not kept books, and a fire had occurred, as it did, within the thirty-day period, under the strict letter of the agreement he could not have recovered. If he had complied as to both requirements, this condition in the policy could not have been held to bar his right of recovery. He was not bound, however, to make an inventory before the last of the thirty days and from that time keep a set of books, and the provisions aforesaid cannot be asserted to bar his right of recovery for a loss by fire which occurred at a time when he was under no obligation to do so."

We have endeavored to state our views on the principles governing the present case, but do not deem it necessary specifically to pass upon each of the twenty-four assignments of error; it is sufficient to say that all those which show rulings in conflict with the views here expressed are sustained.

The judgment is reversed with a venire facias do novo.