### NATIONAL LIBERTY INS. CO. et al. v. NORMAN.

(Circuit Court of Appeals, Fourth Circuit. January 12, 1926.)

No. 2391.

1. Insurance ⬳175—Policies in force, though inventory was not begun before fire, on next to last day for taking it.

Under provision invalidating policies if inventory be not taken within 30 days of issuance, they were in force at time of fire on 29th day, though inventory was not begun.

2. Insurance ⬳175—Time for inventory held to run from "date" of "issuance" of policies as corrected.

"Issuance" of policy requiring inventory within 30 days of "issuance," if not taken within 12 months before "date," of policy, is not synonymous with "date"; and insured hav-

ing sent policy back for correction of agent's mistake in adding "administratrix" after insured's name, 30 days ran from date of issuance of amended policies.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Date.]

In Error to the District Court of the United States for the Western District of North Carolina, at Greensboro; Edwin Y. Webb, Judge.

Separate suits by Daisy Norman against the National Liberty Insurance Company, against the Phœnix Assurance Company, and against the Commercial Union Assurance Company, Limited, respectively, consolidated for trial. Judgments for plaintiff, and defendants bring error. Affirmed.

Charles W. Tillett and Thomas C. Guthrie, both of Charlotte, N. C., for plaintiffs in error.

Louis M. Swink, of Winston-Salem, N. C., and Robert A. Freeman, of Dobson, N. C. (Swink, Clement & Hutchins, of Winston-Salem, N. C., on the brief), for defendant in error.

Before WADDILL, ROSE, and PARKER, Circuit Judges.

ROSE, Circuit Judge. In the court below the defendant in error, Daisy Norman, was the plaintiff. She instituted separate suits against each of the insurance companies, now plaintiffs in error. As the issues in each of the cases were identical, and were to be supported by the same testimony, the learned judge, with the consent of the parties, consolidated them for the trial. The verdict and the judgment in every case being against the defendants, they sued out their writ of error. For brevity, we will call the defendant in error the insured; the plaintiffs in error, the underwriters.

The iron safe clause is found in every one of the policies. Among other things, it required the insured to take a complete itemized inventory of stock on hand at least once in each calendar year, and "unless this inventory has been taken within twelve calendar months prior to the date of this policy, one shall be taken in detail within thirty days of the issuance of this policy or this policy shall be null and void from such date." The policies were dated May 20, 1922. It is admitted that the insured had not taken an inventory of the stock within 12 calendar months, next preceding, and did not thereafter take one at any time before the fire, which occurred on the 11th of July, 1922. If, within the meaning of the clause in question,

the policies were issued on the day upon which they bore date, they became null and void before the fire took place. The claim of the insured is that their date of issuance is June 12, 1922, or but 29 days before the loss. The facts upon which this contention is based, are as follows:

On the day the policies were dated—that is, the 20th of May—the insured applied to the underwriters' agent for them. They were made out and forwarded to her a few days later, the last of them reaching her about May 26. When they arrived, she found out they were made to Daisy Norman, administratrix. The mistake was doubtless due to the fact that, at the time she solicited policies on her stock, she had also asked for one on the store building, and the latter she did want in her name as administratrix. On the 26th of May she sent the policies back, saying in one letter, "Inclosed find two policies made administratrix. Please have them changed to Mrs. Daisy Norman, as the stock is mine and not the estate's," and in the other she said: "The stock belongs to Mrs. Daisy Norman and the store belongs to the estate. You have the building policy correct, but I want the policy on the stock made to Mrs. Daisy Norman. I am sending them over for correction. * * * Will send check in about thirty days."

[1] For some reason the underwriters' agent allowed 17 days to go by without taking the action requested, but on the 12th of June, there was indorsed on every one of the policies: "Indorsement dated June 12, 1922. Assured, Mrs. Daisy Norman. Location, Dobson, N. C. The correct name of the assured under the above numbered policy is Mrs. Daisy Norman, instead of Mrs. Daisy Norman, Administratrix, as stated in the policy." These policies, so corrected, were redelivered to the assured on the same day, that is June 12, 1922. The fire occurred within less than 48 hours from the expiration of 30 days from that date. The insured had not begun the taking of the inventory, and the underwriters say that she could not have finished it in the little time remaining, and that therefore she had for all practical purposes already breached her warranty, even if the date of issuance was as late as June 12. We may not accede to this contention. The policies provide that if the inventory be not taken within 30 days of their issuance, they shall be null and void from such date. This language clearly implies that, until the 30 days have expired, the policies are in force, and, if the fire occurs while they are, the underwriters are liable. Bray v. Insurance Co.,

51 S. E. 922, 139 N. C. 390; Polizzi v. Commercial Insurance Co., 99 A. 907, 255 Pa. 297; Homestead Insurance Co. v. Ison, 65 S. E. 463, 110 Va. 18; Springfield Fire & Marine Insurance Co. v. Shapoff, 201 S. W. 1116, 179 Ky. 804; Royal Insurance Co. v. Wright (Tex. Civ. App.) 148 S. W. 824.

[2] On the other hand, we would hesitate to hold, as the insured says we should, that the letter of May 26th was a rejection of the policies, and, if a fire had occurred between that date and June 12, she would have been without insurance. We do not understand the letter to the agent of the company to suggest anything of the kind. She had asked insurance from the 20th of May. She supposed that it had been given her. By mistake of the agent, the word "administratrix" was affixed to her name. She wanted the policies corrected in this respect, and for that purpose she returned them, but she at the same time said she would pay for them. Had a fire occurred in the 17 days between May 26 and June 12, we doubt if any court would have been willing to go so far as to say the policies were not in force. It follows, therefore, that if the meaning of the iron safe clause is that the 30 days begins to run from the time the risk is assumed and the policy is dated, the insured is not entitled to recover.

The clause, as has been already stated, provides that, unless "inventory has been taken within twelve calendar months prior to the *date* of this policy, one shall be taken in detail within thirty days of *issuance* of this policy." The italics are ours. The underwriters argued that the clause means precisely the same as it would if for "issuance" had been substituted the words "the date." Is this contention altogether reasonable? It is true that graceful writing requires that one shall, wherever possible, avoid the repetition of the same word by employing a synonym or near synonym instead; but there is scant reason to suppose that a longing for literary elegance has played much part in the drafting of insurance policies. Any peculiarities of phraseology which may be found in them should be attributed to considerations at once more prosaic and more practical.

Is there any reason why in the iron safe clause the 12 calendar months are to be counted back from "the date" of the policy and the 30 days forward from its "issuance"? We think there is. There can seldom be any room for difference of opinion as to the date of the policy. A mere glance at the instrument will show what its date is, in the absence of a clerical mistake or some other unusual circumstance. It will be convenient for everybody to measure back from it the comparatively long period of 12 calendar months in which an inventory may have been taken. When, however, we come to calculating the 30 days in which it must be taken, if it has not previously been, the problem is by no means so simple.

The risk of fire loss is often assumed in advance of the actual execution of the policy, and quite frequently an appreciable time before it is received by the insured. Ordinarily it is then that the latter for the first time inspects it and learns of the obligations it imposes upon him. There is nothing unreasonable in supposing that the drafter of the iron safe clause may have intended that the 30 days in which the insured was to take the inventory were to run from the time at which the policy was issued from the office of the underwriters' agent to him. Such a construction well fits in with the practical conditions under which the fire insurance business is necessarily conducted. It seems to us to be sound, and we find no controlling authority to the contrary.

In the instant case, while the policies were all dated May 20, there appears to have been some difference in the time at which they were sent to the insured. Her testimony is all we have on the subject, and it is that she received one of them a few days before the 26th of May and the other about 2 days after that date. It was on the 26th she returned them for correction, which was not made until 17 days later, and June 12th was the day upon which she received them back. She was in no sense responsible for this delay. Under all the circumstances, we do not think that the underwriters are in a position to say the 30 days for the taking of the inventory began to run before the date upon which, having corrected the error which they themselves had made, they issued the amended policies to her.

We have examined the other assignments of error, but do not find that they bring before us any ruling below which is at once erroneous and harmful.

Affirmed.