## SELLARS v. CONTINENTAL LIFE INS. CO.

Circuit Court of Appeals, Fourth Circuit.
January 14, 1929.

No. 2760.

J. Hertz Brown, of Spartanburg, S. C. (Carlisle, Brown & Carlisle, of Spartanburg, S. C., on the brief), for appellant.

H. K. Osborne, of Spartanburg, S. C. (Bomar & Osborne, of Spartanburg, S. C., on the brief), for appellee.

Before WADDILL, PARKER, and NORTHCOTT, Circuit Judges.

PARKER, Circuit Judge. This was an action at law instituted by Julia A. Sellars against the Continental Life Insurance Company to recover on a policy of life insurance issued upon the life of her deceased husband. The defense was that the policy had lapsed. At the conclusion of the testimony verdict was directed for defendant, and plaintiff has appealed. We shall refer to the parties in accordance with the positions occupied by them in the court below.

The policy sued on was dated August 7, 1924. The insured, however, refused for some time to accept the policy, and it was not delivered to him until November 19, 1924. The second annual premium was never paid, and the policy contained no provision for extended insurance at the end of the first year except for the 31 days' grace allowed in the payment of premiums. Insured died December 12, 1925. If therefore the second premium was not payable until 12 months after the actual delivery of the policy, the 31 days of grace had not expired. If it was payable August 7, 1925, the policy had lapsed. The case turns, therefore, upon the answer to the question as to when the second premium was payable.

Insured made application for the policy July 18, 1924. He did not pay the premium at the time of the application, and the policy as issued differed from the policy applied for in that the application was for a policy to be issued November 1, 1924, with preliminary term insurance to that date, whereas the policy as issued was dated August 7, 1924, and no term insurance was issued. This change was made because it was seen that prior to November 1st the age of insured would change so that he would be 66 years of age on his nearest birthday and for that reason uninsurable under the rules of the company except by special contract. Insured was only 65 on August 7, 1924, counting his age as of his nearest birthday, and the premium rate of the policy was based on that age. Under the contention of plaintiff these facts become material because the application contained the following provisions:

"(1) If the first premium is paid in cash at the time this application is made and this application is thereafter approved by the company for the amount, on the plan, and in

accordance with the terms of this application, the insurance will be in force from the date of such approval; and the first policy year shall, unless otherwise requested, begin with the date of such approval.

"(2) If the first premium is not paid in cash at the time the application is made, or if a policy different from the one described in this application is issued, the insurance shall not take effect until the first premium thereon has actually been paid to and accepted by the company, or its duly authorized agent, and the policy delivered to and accepted by me during my life and good health; but in that event the policy shall bear the date of its issuance and all future premiums shall become due on such policy and all policy values and extended insurance shall be computed therefrom."

The policy contained the usual provisions as to lapse for nonpayment of premiums, and also the following, which are the ones pertinent to the questions here involved, viz.:

"Only the president or secretary has power in behalf of the company to make or modify this or any contract of insurance, or to extend the time for paying any premium, and the company shall not be bound by any promise or representation heretofore or hereafter made unless made in writing by one of said officers.

\* \* \* \* \* \* \* \*

"This insurance is granted in consideration of the application herefor, which is made a part hereof, and of the payment in advance of four hundred twenty-two and 75/100 dollars being the premium for the term ending on the 7th day of August 1925, which is term insurance and for the legal reserve, if any. The insurance will be continued thereafter upon the payment of the annual premium of four hundred twenty-two and 75/100 dollars, on or before the seventh day of August in every year during the continuance of this policy.

"After delivery of this policy to the insured, it takes effect as of the date stated below.

"In witness whereof, the Continental Life Insurance Company has caused this policy to be signed by its proper officers at Saint Louis, Missouri, this 7th day of August, 1924.
"Edward P. Nelson
"President."

Plaintiff offered testimony, which the court excluded, to the effect that one Bird, who delivered the policy for the agent of defendant, promised insured that it should be dated as of the date of delivery, and that the local agent of defendant had made this promise to Bird. Testimony was also excluded to the effect that after the death of insured the local agent requested plaintiff to return the policy to him in order that he might send it back to the company. The exceptions taken are to the direction of the verdict and to the exclusion of this testimony.

The contention of plaintiff is that the provisions in the application quoted above, which are made a part of the policy, are ambiguous and can reasonably be interpreted as referring to the actual delivery of the policy, and that, when they are so interpreted, the first year of insurance would not expire until November 19, 1925, and the second year's premium would not be payable until then. The contention is that this ambiguity should be resolved in favor of the insured, and that because of the ambiguity the parol evidence excluded was competent as showing the meaning and intention of the parties. We have given careful consideration to the very able brief and oral argument of the learned counsel for plaintiff, but we do not think that any of these positions can be maintained. We do not think, in the first place, that there is any ambiguity as to the date from which the first year's insurance was to run. And, in the second place, we think that the policy itself makes it perfectly clear that the second annual premium was payable on August 7, 1925, and that failure to pay same within the days of grace allowed would forfeit the insurance.

The first of the provisions of the application, which we have quoted, provides for the case where the premium is paid in advance and the policy is issued exactly as applied for. In such case the insurance becomes effective as soon as the application is approved, irrespective of the actual delivery of the policy. This is reasonable, for the company, having received the premium for the insurance and having accepted the offer as contained in the application, should be bound from the time of its acceptance. It is manifest, however, that a different rule should apply where the premium is not paid in advance or the policy is not issued as applied for and as issued constitutes in effect a counter offer from the company. It is to cover these situations, and to guard against contentions that the insurance had become effective before the premium had been paid or the insured had accepted the policy, that the second provision which we have quoted was inserted in the application. This provides that in such cases the insurance shall not become effective until the policy is actually delivered and the premi-

um paid; but evidently in order that there may be no ambiguity about the important matter as to when future premiums shall be payable or the insurance lapse, it further provides that in such cases the policy shall bear the date of its issuance, which evidently means the date of its issuance by the home office, and that all future premiums shall become due on that date in succeeding years and policy values and extended insurance shall be computed with reference thereto.

We see nothing ambiguous in the use of the words "the date of its issuance." It is the custom of life insurance companies, and we think a universal custom, to issue from their home offices policies which are complete in all of their details, and to set forth in such policies the dates upon which they are issued. This date is of importance to both the company and the insured as fixing definitely the date upon which premiums are to be paid and with respect to which rights under the policy are to be calculated; and it is of the greatest importance to both that this date be not left open to any doubt or conjecture. Consequently, we do not think it could possibly have been intended that "the date of its issuance," as used in the application, should have reference to the day of the actual delivery of the policy to the insured. Such interpretation would leave the effective date of the policy, with respect to which the due date of future premiums and other rights under the policy must be calculated, to be shown by parol in contradiction of the date borne by the policy itself or would necessarily contemplate allowing the local agent to make a change in the date borne by the policy, an instrument which by its express terms he is forbidden to change or alter in any way. It is not reasonable to ascribe to the language used by the parties a meaning which would introduce into their contract so great an element of doubt and confusion. The reasonable assumption is that they used the words "date of its issuance" in the sense of their ordinary meaning and had reference to the date borne by the policy, the date on which it was sent out from the home office of the company.

In Mutual Life Ins. Co. of New York v. Hurni Packing Co., 263 U. S. 167, 44 S. Ct. 90, 68 L. Ed. 235, 31 A. L. R. 102, the question was whether a policy had become incontestable under a clause which provided for incontestability except for nonpayment of premiums, provided two years should have elapsed "from its date of issue." Death occurred more than two years after the date upon the face of the policy but within two years of its actual delivery. The court held that "the date of issue" was the date borne upon the face of the policy and that consequently it had become incontestable. We can see no difference in "its date of issue" and "the date of its issuance." As said by the court in that case, quoting from Bement & Dougherty v. Trenton Locomotive, etc., Co., 32 N. J. Law, 513, 515, 516: "The primary signification of the word date, is not time in the abstract, nor time taken absolutely, but, as its derivation plainly indicates, time given or specified, time in some way ascertained and fixed; this is the sense in which the word is commonly used. When we speak of the date of a deed, we do not mean the time when it was actually executed, but the time of its execution, as given or stated in the deed itself. The date of an item, or of a charge in a book account, is not necessarily the time when the article charged was, in fact, furnished, but simply the time given or set down in the account, in connection with such charge."

While it was said in the Hurni Packing Company case that the words used were in view of the circumstances not free from reasonable doubt, this doubt arose from the fact that the policy was back-dated by agreement and was issued as well as delivered at a time subsequent to the date which it bore. There is no intimation that there would have been any doubt as to the meaning of the language if, as here, the question had been whether the date intended was the date placed upon the policy when sent out from the home office as distinguished from the date of actual delivery to the insured. In National Liberty Ins. Co. v. Norman (C. C. A. 4th) 11 F.(2d) 59, a case relied on by plaintiff, the court dealt with a fire insurance policy where there was no issuance of the policy except by the local agent; and the court pointed out that the policy itself distinguished between the "date" and the "issuance" of the policy as these terms were used in the iron-safe clause. Nothing in that case lends support to the contention that the issuance of a life insurance policy means its delivery by the local agent to the insured.

So far we have considered the clause of the application alone; and we think that when so considered it is free from ambiguity. But certainly there can be no ambiguity when considered in connection with the provisions of the policy itself. That instrument provides that "after delivery of this policy to insured it takes effect as of the date stated below," and immediately below comes the attestation clause containing the date of the 7th day of August, 1924. This shows, we think, beyond all question, that the policy after de-

livery became effective as of August 7, 1924, and that the first year's insurance ran from that date and all rights under the policy were to be calculated with reference thereto. And with respect to the time for the payment of the second premium, which is the important question here, there is not the shadow of ambiguity; for the policy provides in so many words: "This insurance is granted * * * for the term ending on the 7th day of August, 1925. * * * The insurance will be continued thereafter upon the payment of the annual premium * * * on or before the seventh day of August in every year during the continuance of this policy."

Plaintiff stresses the fact that under the interpretation which we think is correct insured had no protection between the date of the policy and the date of its delivery, and therefore paid for something which he did not get. This is true; but it is true, also, that on the latter date he obtained a policy issued as to a man 65 years of age and upon a rate applying to that age, whereas in the meantime his age nearest birthday had become a year greater and he had become uninsurable. On the one hand, it is argued that it is a hardship upon insured to pay for protection which he did not receive, and on the other that it would be a hardship upon the company to hold that the policy, which it was willing to issue as of the insurable age of 65 upon the condition that the term should begin at a time when insured was actually of that age, should be held without increase of premium and without its consent to begin when insured was 66 years of age and uninsurable. All of these considerations, however, are beside the point. Courts cannot make contracts for parties. They can only enforce the contracts which the parties themselves have made. And in this case the parties clearly contracted that the second premium should become due and payable August 7, 1925, and that in default of payment the policy should lapse after the expiration of the 31 days of grace.

As was said by Judge Bryan, speaking for the Circuit Court of Appeals of the Fifth Circuit in a case very similar to this, McCampbell v. N. Y. Life Ins. Co., 288 F. 465: "It is argued that * * * it is a condition precedent to the company's liability that the policy should be issued and the first premium paid during the lifetime and good health of the applicant, and that to require the first premium to cover a period prior to the beginning of such liability would be to require an insured to pay for insurance which he did not obtain. A conclusive answer is that parties are entitled to make their own contracts. It is true that, if the insured in this case had died before March 1, 1901, liability under the policy would not have attached. But the insured, by agreeing that January 31 should be the anniversary of the policy, and that premiums should be paid on that day, or by February 28 of each year, during the life of the policy, secured insurance as of the age 39, instead of 40, and thereby was required to pay $16.50 per annum less than he would have been required to pay if the policy had been issued to him after February 13, 1901. January 31 of each year was recognized by both the insured and the insurer as the date upon which premiums were required to be paid. If the contention of the plaintiff should prevail, it would cause untold confusion. * * * The business of life insurance is conducted upon the theory that premiums will be promptly paid. Klein v. [New York Life] Insurance Co., 104 U. S. 88, 26 L. Ed. 662; [Iowa Life] Insurance Co. v. Lewis, 187 U. S. 335, 23 S. Ct. 126, 47 L. Ed. 204. The time when a premium is due should be definite, and that cannot be if the date upon which the first premium was in fact paid should fix the dates upon which subsequent premiums should be paid. Therefore the date mentioned in the policy for the payment of premiums governs. The date when the first premium was paid, which is almost always uncertain, and in most instances impossible of ascertainment, is immaterial."

The testimony as to the promises by the local agent was properly excluded. As there was no ambiguity, it was not competent as bearing upon the meaning of the policy; and it is well settled that such testimony is not competent for the purpose of contradicting or modifying the terms of the policy or for showing that these have been waived. Northern Assurance Co. of London v. Grand View Bldg. Ass'n, 183 U. S. 331, 22 S. Ct. 133, 46 L. Ed. 213; Ætna Life Ins. Co. v. Moore, 231 U. S. 543, 559, 34 S. Ct. 186 (58 L. Ed. 356); Lumber Underwriters of New York v. Rife, 237 U. S. 605, 35 S. Ct. 717, 59 L. Ed. 1140.

There was no error, and the judgment of the District Court is affirmed.

Affirmed.