NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3927-23

LISA VAN HORN,

     Plaintiff-Appellant,

v.

HARMONY SAND &
GRAVEL, INC.,

     Defendant-Respondent.

_____

Argued October 22, 2025 – Decided November 19, 2025

Before Judges Mayer, Vanek and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Warren County, Docket No. L-0254-20.

Daniel J. Dugan argued the cause for appellant (Spector Gadon Rosen Vinci, PC, attorneys; Daniel J. Dugan, on the briefs).

Scott M. Wilhelm argued the cause for respondent (Wilhelm & Roemersma, PC, attorneys; Scott M. Wilhelm, on the brief).

PER CURIAM

Plaintiff Lisa Van Horn appeals from a final judgment entered in favor of defendant Harmony Sand & Gravel, Inc. (Harmony) after a bench trial, based on the trial judge's finding that Van Horn did not prove Harmony breached a profit agreement granting it the right to mine sand and gravel from property she owns. We affirm.

I.

We set forth certain salient facts in our prior decision, Van Horn v. Harmony Sand & Gravel, Inc., 442 N.J. Super. 333 (App. Div. 2015). We recount only those facts from our prior decision and the trial record that are material to our disposition of the issues on appeal.

Van Horn inherited forty-five-acres of property in White Township (property) from her father, Earl Richmond Smith, following his death in 2002. Id. at 336. In 1990, Smith and Harmony entered a written agreement permitting Harmony the exclusive right "to remove available soil materials and aggregates from [the property]" for a ten-year term. Ibid. The agreement provided that once the materials were removed, Harmony had discretion to set the sale price of the extracted materials to third parties. Id. at 337. Harmony agreed to pay Smith a fixed price per ton of materials it removed, subject to a minimum

payment of $25,000 per year.  Ibid.  The agreement also identified several methods for verification of the amount of material extracted.  Ibid.

When the first agreement expired, the parties signed another agreement on March 2, 2000 (Second Agreement), containing many of the same terms.  Id. at 338.  The Second Agreement in part modified the contract term from ten years to:  an indeterminate period of years and until [Harmony] determines, in its sole discretion, that sufficient aggregate materials cannot be removed in a manner and/or in such amounts as to make it commercially reasonable to continue the removal of soil materials and aggregates from [Smith's] properties.  Ibid.

The Second Agreement is "subject to all zoning and licensing approvals by the Township of White" and imposes an obligation on Harmony to "operate its business in accordance with all applicable local, state and federal ordinances and regulations dealing with extraction of materials . . . or otherwise."  Harmony must also "take such steps as are reasonable and necessary to assure minimum damage to [Van Horn's] property and to prevent any unnecessary and unwanted water to accumulate thereon."

The Second Agreement also required Harmony to re-slope all banks and to spread any stockpiled topsoil remaining on the property upon termination, with Harmony assuming all responsibilities for final restoration of the property.

A-3927-23

Ibid.    Harmony's reclamation obligation included complying with any municipal, county, and other agency requirements.

In 2012, Van Horn filed a complaint seeking a declaratory judgment that "Harmony had no further rights in the property[,] . . . the [Second Agreement] is of no further force and effect[,] . . . [and she] is entitled to possession of the property." Ibid.  In reviewing Van Horn's appeal of an order granting summary judgment to Harmony, we concluded the Second Agreement had not been terminated and constituted an enforceable "profit a prendre," because it is a property interest permitting the holder to enter the land to extract natural resources. Id. at 336-37.  We affirmed dismissal of Van Horn's complaint. Id. at 345.

Approximately five years later, Van Horn filed this action seeking damages based on Harmony's alleged breach of contract and requesting a declaration that the Second Agreement was terminated.  Richard Hummer, the owner of Harmony Sand & Gravel; Ronald Paniucci, Harmony's expert witness; and Van Horn each testified at a bench trial on Van Horn's claims.

Van Horn testified that the Second Agreement did not permit Harmony to engage in activities other than sand and gravel extraction on the property.  She

understood Harmony's obligation to reclaim the property's banks and slope them to a forty-five-degree angle to be triggered only after termination.

Hummer testified Harmony has mined sand and gravel on the property since 1990 and has deemed it economically feasible to continue mining the remaining six acres. Hummer testified that four or five prior operators mined right up to the property's setback and because there were no reclamation requirements applicable at that time, Harmony inherited the entire obligation.

Hummer testified that Harmony imports New Jersey-certified clean fill onto the property through third-party reclamation company, Earth Efficient, to comply with its ongoing contractual reclamation obligation which must be concluded within one year after termination. Hummer also testified that reclamation of the property is required under its annual Township mining permit, with compliance secured by posting an annual reclamation bond.

Earth Efficient pays Harmony for depositing fill on the property. Hummer testified that the Second Agreement does not preclude Harmony from profiting through importing clean fill to comply with its reclamation obligation.

After the trial judge deemed him qualified, Panicucci testified as Harmony's professional engineer with expertise in mining. Panicucci began working for Harmony approximately sixteen years prior to trial by preparing its

A-3927-23

annual mining license, water allocation permits, and New Jersey Department of Environmental Protection (NJDEP) stormwater permits for various sites, including this property. He testified that Harmony continues to mine the property.

Panicucci testified that a material acceptance plan is required as part of Harmony's application for an annual mining license through which the Township regulates fill imported to achieve reclamation of the steep slopes on the property caused by mining. Panicucci's preparation of the application includes evaluation of the site to determine the cost of reclamation or restoration should mining cease. He testified that Harmony's reclamation obligation included ensuring that runoff is controlled on the site and that any slopes exceeding a two-to-one ratio are reclaimed. After reclamation, the slopes are required to be covered with topsoil and grass or other growth to control erosion.

According to Panicucci, Harmony accomplished all fill importation through Earth Efficient pursuant to the Township's annual material acceptance plan and reclamation requirements, and in accordance with DEP clean fill certification requirements. Panicucci did not know whether the Second Agreement permitted or precluded fill importation.

6

After considering the evidence, the trial judge issued an oral decision denying Van Horn's requests for declaratory, injunctive, and compensatory relief. The judge found Van Horn did not prove by a preponderance of the credible evidence that the Second Agreement had been terminated or Harmony's importation of fill dirt onto the property constitutes a breach of the profit agreement. The trial judge found Van Horn did not present any evidence to support her assertion that importing fill dirt was not part of Harmony's reclamation obligation. On other claims, such as failure to control dust and provide access to the property, the judge found there was either no credible or corroborating evidence of breach, or the matters had already been resolved in prior court orders.

In assessing the credibility of the witnesses, the trial judge found that Van Horn's "credibility [was] significantly affected by her unhappiness," and her testimony "had some significant flaws . . . brought about or demonstrated . . . on cross-examination." Overall, the judge found Hummer's testimony to be "fairly straightforward" and credible. While the judge found Hummer's testimony regarding profit margins to be "elusive" regarding specific numbers, he found his testimony to be credible regarding the business operations. The trial judge found Panicucci to be "the most credible of all of the witnesses" and accepted

7

his testimony that mining at the property had not ceased and that there were still six acres of the property left to mine.

Van Horn appealed, challenging certain of the trial judge's rulings. Van Horn's arguments on appeal are cabined to the contentions that the agreement is terminated because it is no longer commercially reasonable for Harmony to continue mining operations at the property and that Harmony breached the Second Agreement by accepting payments from a third party for the right to deposit fill on the property.

## II.

### A.

Our review of the trial judge's factual conclusions after a bench trial on a breach of contract action is limited. D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013). "[W]e do not disturb the factual findings and legal conclusions of the trial judge unless we are convinced they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Ibid. (quoting Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011) (alteration in original)).

The construction of contract terms presents a question of law for the court. See Bosshard v. Hackensack Univ. Med. Ctr., 345 N.J. Super. 78, 92 (App. Div.

2001).   To the extent that the trial court's decision constitutes a legal determination, our review is de novo.  Ibid.  (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

B.

Our review under this lens is predicated on well-settled legal principles governing the construction of contracts.  The interpretation of contract terms "are decided by the court as a matter of law unless the meaning is both unclear and dependent on conflicting testimony."  Bosshard, 345 N.J. Super. at 92.

When interpreting a contract, "we first examine the plain language of the [contract] and, if the terms are clear, they 'are to be given their plain, ordinary meaning.'"  Pizzullo v. N.J. Mfrs. Ins. Co., 196 N.J. 251, 270 (2008) (quoting Zacarias v. Allstate Ins. Co., 168 N.J. 590, 595 (2001)).  "Courts cannot make contracts for parties.  They can only enforce the contracts which the parties themselves have made."  Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43 (1960) (quoting Sellars v. Cont'l Life Ins. Co., 30 F.2d 42, 45 (4th Cir. 1929)).  Where the terms of a contract are clear and unambiguous there is no room for interpretation or construction and we must enforce those terms as written.  E. Brunswick Sewage Auth. v. E. Mill Assocs. Inc., 365 N.J. Super. 120, 125 (App. Div. 2004).

9

Applying these principles, we discern no error with the trial judge's finding that the Second Agreement expressly grants Harmony the right to mine the subject property until Harmony determines, "in its sole discretion, that sufficient aggregate materials cannot be removed in a manner and/or in such amounts as to make it commercially reasonable to continue the removal." Thus, Harmony has the exclusive right to determine when continued mining is commercially unreasonable, eliminating any basis to inject a third-party or owner-based assessment of commercial reasonableness. The contractual language is not subject to conflicting interpretations dependent on extrinsic evidence, nor do the parties argue otherwise. Rather, as the trial judge found, the Second Agreement vests Harmony with contractually-exclusive discretion to terminate the contract based on its own determination of commercial reasonableness.

The trial judge's finding that the Second Agreement neither explicitly nor implicitly prohibits importing fill for restoration purposes is also supported by the trial record. Paragraph sixteen of the Second Agreement requires Harmony to "[re-slope] all banks and to spread any stockpiled topsoil remaining on [the] premises" in accordance with the Township's requirements. Panicucci's unrebutted testimony, found credible by the trial judge, was that the reclamation

requirement was not only triggered at termination but was an ongoing obligation.

The Second Agreement is silent as to the method by which the ongoing reclamation obligation must be accomplished or the permissible source of fill that may be utilized. Nor does the contract prohibit Harmony from deriving revenue while fulfilling its restoration obligations. There is nothing in the four corners of the Second Agreement that can reasonably be read as prohibiting the importation of fill or requiring Van Horn's consent and profit-sharing on restoration activities.

We are unconvinced the trial judge erred in finding that Van Horn did not meet her burden of proving these contractual provisions were breached by the preponderance of the evidence. The judge found credible the testimony of Hummer and Panicucci that mining had continued and there were several acres left to mine on the property.. We defer to the trial judge's assessment of credibility. See Cesare v. Cesare, 154 N.J. 394, 412 (1998) (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). Thus, we find sufficient support for the judge's finding that Van Horn did not prove Harmony exercised its sole discretion to terminate the Second Agreement since mining operations on the property had not ceased.

The trial judge found Harmony's proofs supported the conclusion that importation of fill through Earth Efficient complied with its continued obligation to re-slope and reclaim the property and was not a breach of the Second Agreement. We decline to disturb the trial judge's findings because they were predicated on substantial, credible evidence in the record.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-3927-23